STATE of Texas, Appellant,

v.

Minor POUNDS, Appellee.

No. 8564.

Court of Civil Appeals of Texas, Amarillo.

July 7, 1975.

Rehearing Denied Aug. 4, 1975.

Lee H. Lytton, III, Asst. Gen. Counsel, Austin, for appellant.

Tom M. Richards, Lubbock, for appellee.

REYNOLDS, Justice.

The district court dismissed for want of jurisdiction the disbarment proceeding brought against a non-resident attorney licensed by the State of Texas and founded on alleged acts committed while he was a Texas resident. The trial court viewed the State Bar Act declaration that "No disbarment proceedings shall be instituted against any attorney except in the District Court located in the county of said attorney's residence" as being mandatory and exclusive. In our view, the statutory proviso relates only to venue for disbarment proceedings instituted against resident attorneys and the act, not being a jurisdictional statute, does not deprive the district court of its implied jurisdiction to entertain disbarment proceedings against a non-resident attorney licensed by the state for acts committed while the attorney was a Texas resident. Reversed and remanded.

On 20 May 1974, the State of Texas, acting through the Grievance Committee for State Bar District No. 16, filed in the 72nd Judicial District Court of Lubbock County, Texas, a complaint alleging that Lubbock County resident Minor Pounds, a duly licensed attorney of the State of Texas and a member of the State Bar, had committed in Lubbock County in 1971 certain dishonorable acts that warrant his disbarment. Non-resident process authorized by Rule 108[1] was served on Pounds at Ponape

---

1. Unless otherwise specified, all rules are cited by the number under which they appear in Texas Rules of Civil Procedure.

in the Eastern Caroline Islands. Through his attorney, Pounds filed, in due order of pleading, a verified Rule 120a[2] special appearance motion, a plea of privilege,[3] and a general denial. It was vowed in the special appearance motion that Pounds was not either at the time the proceeding was filed or at the time of his special appearance a resident of or domiciled in the State of Texas, and that he had committed no act subjecting him to the jurisdiction of the court.

At a 13 November 1974 hearing to first determine the issue of jurisdiction, the court heard the evidence summarized as follows: Licensed as an attorney only by the State of Texas, Pounds resided in Lubbock County and maintained a law office in the City of Lubbock until 30 September 1972. On that date, he moved to Santa Barbara, California, in order to study for the California bar examination. On 9 January 1973, having accepted employment as District Attorney for the Trust Territory of the Pacific Islands, a position which requires the officeholder to be licensed as an attorney in some state, Pounds left California and established residency at Kolonia, Ponape, Eastern Caroline Islands, Micronesia,[4] where he intends to remain. He has continuously served as district attorney and his contract has been extended to February, 1977. Since Pounds left Texas, he has not represented anyone in the state in any legal matter and he has returned but once to attend his father's funeral in April of 1974.

For the State Bar's fiscal year from 1 June 1973 to 31 May 1974, Pounds paid the full dues required of a resident, but for the subsequent fiscal year, he paid non-resident dues. He maintains his Texas driver's license and renewed it as a non-resident in December of 1973. He is listed as a qualified voter on the Lubbock County voter registration lists as the result of a 1972 registration, but he owns no interest in his former law practice or in any Texas land or stock.

Following the hearing the court, expressing the feeling that *McGregor v. Clawson*, 506 S.W.2d 922 (Tex.Civ.App.—Waco 1974, no writ), compelled the sustention of the special appearance motion, dismissed the proceeding for want of jurisdiction. The one filed conclusion of law, paraphrasing the language of *McGregor*, reads:

> Article 320a–1, Vernon's Civ.Stat., the State Bar Act, states in Section 6 that "No disbarment proceedings shall be instituted against any attorney except in the District Court located in the county of said attorney's residence. . . ." Section 6 of Article 320a–1, said venue provision of the State Bar Act, is particular in nature and thereby applies to specific fact situations encompassed by the State Bar Act. Therefore, where the cause of action and remedy for its enforcement is derived not from the common law but from the statute the statutory provisions are mandatory and exclusive and must be complied with in all

2. Rule 120a reads, in part:
 1. . . . a special appearance may be made by any party either in person or by attorney for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process issued by the courts of this State . . . Such special appearance shall be made by sworn motion filed prior to plea of privilege or any other plea, pleading[s] or motion; . . .
 2. Any motion to the jurisdiction provided for herein shall be heard and determined before a plea of privilege or any other plea or pleading may be heard.

3. If the court sustains the objection to jurisdiction, an appropriate order shall be entered. If the objection to jurisdiction is overruled, the objecting party may thereafter appear generally for any purpose.

3. The plea of privilege asserted that Pounds had the right to have the cause of action alleged against him transferred to Ponape (District), Eastern Caroline Islands.

4. Pounds placed the location of Ponape approximately three thousand miles west of Honolulu and one thousand five hundred miles east of Guam.

aspects, or the action is not maintainable. Therefore, to hold that the defendant in a case of this nature can be sued in a county not his residence would require the District Court to legislate and this being a legislative function is not for the district court to determine.

In *McGregor*, a disbarment proceeding instituted in Hill County against resident attorney McGregor was transferred to Coryell County under authority of Rule 257 when the trial court, after a hearing on the State Bar's motion for change of venue, concluded that neither party could obtain a fair trial in Hill County. In a mandamus action, the appellate court held the transfer order void, reasoning that "the venue provisions of the State Bar Act are *particular* in nature, and apply to specific fact situations encompassed by the State Bar Act," which the legislature intended to control over Rule 257. In the course of the opinion, citation to *State v. Dancer*, 391 S.W.2d 504 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.), a case deciding that an individual acting independently of the State Bar and of any district grievance committee is not authorized by the State Bar Act to institute disbarment proceedings, is made for the proposition that the legislature intended the State Bar Act as a full and comprehensive set of laws to cover completely the practice of law including the regulation and disciplining of lawyers; but *McGregor*, unlike the case at bar which poses the question of jurisdiction over the person of a non-resident attorney to inquire into the propriety of his acts while a resident, was concerned only with the proper venue for a disbarment proceeding brought against a resident Texas attorney.

■ It must be borne in mind that jurisdiction and venue are not synonymous. Jurisdiction is the power of the court to decide a controversy between parties and to render and enforce a judgment with respect thereto; venue is the proper place where that power is exercised.

Neither *McGregor*, nor any case cited to us, nor any reported case we have discovered, has been concerned with the jurisdiction of the Texas courts to entertain disbarment proceedings against a non-resident attorney for acts allegedly committed while he was a Texas resident. Properly, then, our first resort is to the State Bar Act to ascertain if it purports to either encompass or exclude that jurisdiction and, if not, to secondly explore whether that jurisdiction otherwise exists.

In 1939, the 46th Legislature passed an act having for its purpose the regulation of the practice of law, which was denominated in Section 1 as the State Bar Act and numbered Article 320a–1, Vernon's Texas Civil Statutes. Sec. 2 of the act created the State Bar as an administrative agency of the Judicial Department with powers to carry out the purposes of the act. Sec. 3 constitutes all those licensed to practice law as members of the State Bar and makes them subject to the act and to the rules adopted by the Supreme Court. The Supreme Court is authorized by Sec. 4 to propose rules and regulations which, when approved by a vote of the majority of the members of the State Bar, shall be promulgated for, among other matters, the disciplining, suspending and disbarring of attorneys. Sec. 5 provides that no rule or regulation shall abrogate "the right of trial by jury in disbarment proceedings in the county of the residence of the defendant." The complete heading preceding Sec. 6 is composed of these words:

Venue; conviction in court prerequisite to suspension; appeal; probation; disbarment

and Sec. 6 reads, in part:

Sec. 6. No disbarment proceeding shall be instituted against any attorney except in the district court located in the county of said attorney's residence
.  .  . .

Sec. 7 is the provision that the invalidity of any portion of the act shall not invalidate

any other portion. It was expressed in Sec. 8 that all laws or parts of laws in conflict with the act or with the rules and regulations adopted under the act were repealed.

■ Thus, it is apparent from a reading of the statute that there is no provision which, as such, purports to confer jurisdiction on any court. Those sections speaking of the proper forum as the district court in the county of the attorney's residence are directed not to jurisdiction, but to the right of trial by jury and to venue. Absent any provision for jurisdiction, it is more reasonable to believe that the legislature recognized the jurisdiction the district courts previously had exercised in disbarment proceedings as an implied power stemming from their constitutional jurisdiction, and intended to enact the State Bar Act, as expressed in *Bryant v. State*, 457 S.W.2d 72, 78 (Tex.Civ.App.—Eastland 1970, writ ref'd n. r. e.), "in aid of the judiciary, not to the exclusion of the constitutional powers of the judiciary." To this extent, "the Legislature has set up machinery" for "the regulation of the practice of law," *Hexter Title & Abstract Co., Inc. v. Grievance Committee, Fifth Congressional Dist., State Bar of Texas,* 142 Tex. 506, 509–10, 179 S.W.2d 946, 948 (1944); yet, the mechanics for enforcement are silent concerning the situation where the acts committed by a resident Texas attorney are not challenged until after he removes himself from the state. Notwithstanding, this silence is not determinative and the inquiry does not cease with the State Bar Act, for "(t)he first maxim of equity is that it will not suffer a right to be without a remedy." *Miers v. Brouse*, 153 Tex. 511, 271 S.W.2d 419 (1954). As a result, it becomes necessary to invade that realm of implied authority noticed, but not invoked, in *Hexter* to determine if the district court has the implied authorization to entertain the disbarment proceeding against the now non-resident attorney.

Article 2, Sec. 1, of the Texas Constitution adopted in 1876 divides the powers of the state government among three distinct departments—i. e., the legislative, the executive, and the judicial—and directs that none of the departments shall exercise, except as may be constitutionally permitted, any power attached to either of the other departments. Art. 5, Sec. 8, of that document established the jurisdiction of the district courts over certain matters, but disbarment was not specifically mentioned there or in any other constitutional provision. By the 1891 amendment, the jurisdiction of the district court was extended to other matters including "general original jurisdiction over all causes of action whatever for which a remedy or jurisdiction is not provided by law or this Constitution." Meanwhile, the 8th Legislature had addressed itself to the regulation of the conduct of attorneys through legislation, one act of which is now Art. 313, V.A.C.S., enacted January 18, 1860, providing that any attorney who should be guilty of fraudulent or dishonest conduct, or of any malpractice, might be suspended or might have his license revoked by the district court of the county in which he resided or where such conduct or malpractice occurred.

In 1894 there was considered in *Scott v. State*, 86 Tex. 321, 24 S.W. 789, a disbarment proceeding instituted in the district court before the 1891 constitutional amendment. The Supreme Court, mentioning that statutory regulation of disbarment proceedings were embodied in the civil statutes, held that the disbarment action was a civil case over which the district court had original jurisdiction, stating, "The power to disbar attorneys is not expressly conferred by that section [Art. 5, Sec. 8, Texas Constitution] upon those courts, but it is a power necessarily inherent in all courts possessing such general jurisdiction as is given to the district courts by the Constitution of 1876. We have no serious doubt that the legislature was empowered to regulate the exercise of the jurisdiction of the district court in this matter, . . ." Later, *Burns v. State,* 129 Tex. 303, 103 S.W.2d 960 (1937),

in reversing *Burns v. State*, 76 S.W.2d 172 (Tex.Civ.App.—Fort Worth 1934), where it had been observed that, absent legislation, the power of the court to appoint its attorney is inherent, and in holding that the legislative conferral upon the Supreme Court of the exclusive right to issue licenses to practice law did not take from the district court the power to disbar, seems not to have looked past the power to disbar it found in Art. 313, V.A.C.S. Still later, the opinion in *Grievance Committee of State Bar of Texas, Twenty-first Congressional Dist. v. Coryell*, 190 S.W.2d 130 (Tex.Civ. App.—Austin 1945, writ ref'd w. o. m.), a case determining that certain acts constituted the practice of law whether done for compensation or not, had occasion to refer to "the inherent power of the court to control, supervise, and to determine who shall practice law."

Parenthetically, we note that in *Commissioners Court of Lubbock County v. Martin*, 471 S.W.2d 100, 109 (Tex.Civ.App.—Amarillo 1971, writ ref'd n. r. e.), we wrote:

> . . . While it may be an exercise in semantics, when the courts speak of "inherent" powers, we believe they actually are speaking of "implied" powers. "Inherent" means something firmly infixed, as in a constitution from which the judiciary derives its initial powers. "Implied" has the connotation of something virtually involved as a requisite to the performance of a function. As our Supreme Court stated in Ex parte Hughes, 133 Tex. 505, 129 S.W.2d 270 (1939):

> "Under our judicial system our courts have such powers and jurisdiction as are defined by our laws constitutional and statutory. Under our system there is no such thing as the inherent power of a court, 'if, by that, be meant a power which a court may exercise without a law authorizing it'. *Messner v. Giddings*, 65 Tex. 301. Of course, jurisdiction is granted by law when it is either directly conferred or ought to be implied from the jurisdiction directly granted. In other words, our courts have such powers and jurisdiction as are directly provided by law, and, in addition thereto, they have such further powers and jurisdiction as are reasonable, proper and necessary,— that is, as ought to be inferred, from the powers and jurisdiction directly granted."

■ Accordingly, it is our studied opinion that the district courts derive from their constitutional grant of jurisdiction the implied—or, as some authorities prefer, the inherent—power to entertain disbarment proceedings, including those instituted against non-resident attorneys because of acts committed while those attorneys were Texas residents, even though the State Bar Act does not set forth the procedural machinery for such actions. Viewed from this perspective, the provisions of the State Bar Act are not in conflict, but operate to achieve a uniform regulation of the exercise of that jurisdiction over resident Texas attorneys. Neither do we find any conflict in the State Bar Rules promulgated by the Supreme Court pursuant to the State Bar Act to regulate the conduct of attorneys licensed by the Supreme Court; but, beyond that, our holding is harmonious with the State Bar Rules Sec. 11 command that "It shall be the duty of each District Grievance Committee and its members to receive complaints of professional misconduct, alleged to have been committed by *an attorney within the district*, or by an attorney having his office or residence therein; . . . ." (Emphasis supplied)

It follows that the judgment of dismissal for want of jurisdiction must be reversed. We express no opinion on any other matter not reached and passed upon by the trial court.

The judgment of the trial court is reversed and the cause is remanded for reinstatement on the docket of the district court.