Ronald X. GORDON, Appellant,

v.

Mildred JONES and James Albro, Appellees.

No. 01–04–00656–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 8, 2006.

378

Ronald X. Gordon, The Woodlands, pro se.

Mildred Jones, Kendleton, pro se.

Charles R. Slone, Richmond, for Appellees.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

SHERRY RADACK, Chief Justice.

Appellant, Ronald X. Gordon, appeals pro se to challenge dismissal with prejudice of his claims against appellees, Mil-

dred Jones and James Albro, in response to Albro's motion. Appellant's five points of error present the following two issues for review: (1) whether the trial court erred by dismissing the case with prejudice based on Albro's contention that a different court had acquired dominant jurisdiction over appellant's claims and (2) whether the trial court erred by not filing findings of fact and conclusions of law. We agree that the trial court erred by dismissing appellant's cause with prejudice. Because that issue is dispositive of the appeal, we do not address appellant's second issue. We reverse and remand.

### Factual and Procedural Background

Quinn E. Gordon (appellant's father's cousin) died testate in 1981. His estate consisted of approximately 26 acres of land, and his will devised one acre of this land to Burton Gordon, who is appellant's deceased father (father). When father's cousin's will was probated in Wharton County, the application for probate stated that father's cousin was a resident of Wharton County, and that the location of the 26 acres was in Wharton County. Appellant's father died on December 22, 1988, about eight years after father's cousin's will was probated. Father died intestate, and appellant survived him.

#### 1. County–Court Litigation through May 2, 2002

On August 13, 2001, in Fort Bend County Court at Law No. 1 (county court), appellant filed an application to determine the heirships of his father's and father's cousin's estates. Appellant's pleadings alleged that he was the sole heir of father, who was the sole heir of father's cousin, and further alleged that father's cousin's will had been fraudulently probated because the application for probate of the will misrepresented that father's cousin's

principle residence and the 26 acres were located in Wharton County, when they are actually in Fort Bend County. On May 3, 2002, the county court dismissed appellant's applications to determine heirship for want of jurisdiction. Shortly thereafter, on May 21, 2002, appellant filed a petition to reopen father's cousin's 1981 probate case in Wharton County.

## 2. Trial–Court Litigation through June 25, 2002

Less than a week after the county court dismissed appellant's applications to determine heirship, appellant filed a trespass-to-try-title action in the 400th Judicial District of Fort Bend County, which is the trial court from which this appeal arises. In addition to allegations to quiet title to the Fort Bend County land, appellant's pleadings in the trial court also allege fraud and attorney misconduct related to the probate of father's cousin's will. Albro's May 20, 2002 answer includes a general denial to appellant's claims and a request that appellant take nothing on those claims.[1] On June 25, 2002, however, Albro moved to abate the trial-court litigation pending outcome of (1) appellant's appeal of the county court's dismissal for lack of jurisdiction and (2) appellant's petition to reopen the 1981 probate case in Wharton County. The record before us shows no ruling by the trial court on Albro's motion to abate.

## 3. Appeal of County–Court Dismissal to this Court

On June 19, 2002, appellant perfected an appeal to this Court to challenge the county court's May 3, 2002 dismissal, for want of jurisdiction, of appellant's application to determine his father's heirship.[2] See Gordon v. Albro, No. 01–02–000681–CV, slip op. at 3 & n. 2, 2003 WL 2002543, at *1 & n. 2 (Tex.App.-Houston [1st Dist.] May 1, 2003, no pet.).[3] This Court's May 1, 2003 opinion states that although appellant's assertions of fraud and attorney misconduct were improper in an heirship determination, that impropriety "did not divest the [county court] of subject matter jurisdiction." Id., slip op. at 6; 2003 WL 2002543 at *2. Accordingly, "the Fort Bend County Court improperly held that it lacked jurisdiction over [appellant's] claims." Id.

## 4. County–Court Litigation on Remand through January 21, 2004 Judgment

After our May 3, 2003 opinion issued, appellant continued the county-court litigation on remand. Having previously filed the trespass-to-try-title action and related claims in the trial court, appellant proceeded in county court solely on the determination-of-heirship proceeding. The county court tried appellant's application to deter-

---

1. Tex.R. Civ. P. 788 recognizes a plea of "not guilty" in trespass-to-try-title actions, but does not preclude a general denial. See Brinkley v. Brinkley, 381 S.W.2d 725, 727 (Tex.Civ.App.-Houston [1st Dist.] 1964, no writ).

2. Because appellant challenged only the dismissal of his application to determine his father's heirship, our May 1, 2003 opinion did not address the dismissal of appellant's application to determine father's cousin's heirship. See Gordon v. Albro, No. 01–02–000681–CV, slip op. at 3 n. 2, 2003 WL 2002543, at *1 n. 2 (Tex.App.-Houston [1st Dist.] May 1, 2003, no pet.).

3. While the appeal in Cause No. 01–02–000681–CV was pending, appellant sought a default judgment against Albro's codefendant in the trial-court litigation and appealed the denial of that motion to the Fourteenth Court of Appeals, which dismissed the attempted appeal on the grounds that the judgment challenged was not final. Ronald X. Gordon v. Mildred Jones, No. 14–03–00714–CV, 2003 WL 22097954 (Tex. App.-Houston [14th Dist.] Sept. 11, 2003, no pet.). The Fourteenth Court's mandate issued on January 7, 2004.

mine his father's heirship on December 16, 2002 and, on January 21, 2003, signed an amended judgment that disposed of the disputed property and awarded appellant 100% of his father's real and personal property.

### 5. Trial–Court Litigation through February 27, 2004 Dismissal with Prejudice

On November 12, 2003, while appellant's county-court litigation was proceeding, but not yet tried, Albro filed a motion in the trial court in which he requested that the trespass-to-try title action and pending claims be transferred to the county court because the two matters referred to in his earlier motion to abate had been resolved: specifically, appellant had succeeded in his appeal of the county-court dismissal, and his suit to reopen the 1981 probate case in Wharton County had been dismissed. Albro further stated that the county court had "jurisdiction to hear and resolve all matters involved in these pending proceedings with one trial."

On November 25, the trial court reset Albro's motion to transfer to December 15, 2003. This date was one day before the trial date set for appellant's county-court case. On December 12, 2003, however, Albro filed a "Motion to Pass Scheduled Hearing." In this motion, Albro alleged that he and appellant had "agreed to proceed with" the heirship determination in county-court "without the requested transfer of the case."

On February 5, 2004, after the county-court litigation had proceeded to judgment, Albro moved to dismiss the pending litigation in the trial court on the grounds that the county-court judgment had left "nothing ... to litigate." Albro argued that the parties had resolved claims of title "to the same land" in the probate litigation in county court, which awarded "title to

the same land." Albro's motion did not address appellant's related claims of fraud and attorney misconduct.

One week later, on February 12, 2004, Albro filed an additional motion to dismiss appellant's lawsuit. In this motion, Albro argued, for the first time, that dismissal was appropriate because the county court, which had already rendered judgment, had "dominant jurisdiction" over appellant's lawsuit. On February 27, 2004, the trial court granted the motion and ordered appellant's cause of action "dismissed with prejudice." The trial court's order states that Albro's motion "should be granted" because (1) the trial court and the county court had "concurrent jurisdiction," (2) the county-court action was filed first, and (3) the county court had "dominant jurisdiction." Although nothing in the record before us shows that Albro requested dismissal "with prejudice," the trial court nonetheless rendered that ruling.

### 6. Summary of Albro's Contentions in the Trial Court

Until the trial court dismissed appellant's claims with prejudice, Albro took the following positions, through the following filings, with respect to appellant's trespass-to-try-title action and its related claims for fraud and attorney misconduct:

(1) **General Denial on the Merits:** May 20, 2002.

(2) **Motion to Abate:** On June 25, 2002, Albro moved to abate the litigation pending outcome of (a) appellant's challenge to the county-court's dismissal and (b) appellant's petition to reopen the 1981 probate case in Wharton County.

(3) **Motion to Transfer to County Court:** On November 12, 2003, after this Court issued its May 1, 2003 opinion, but before the county court tried the heirship determination, Albro moved to transfer appellant's claims to the county

court, which, Albro contended, had "jurisdiction to hear and resolve all matters involved in these pending proceedings with one trial." Albro also stated that appellant's claims to reopen the 1981 probate in Wharton County had been dismissed. A hearing was set on this motion for December 15, 2003, the day before the county-court trial setting.

(4) **Motion to Pass [December 15, 2003 Hearing on Motion to Transfer to County Court]:** Three days before the hearing set for the motion to transfer, Albro moved to pass the hearing on the grounds that he and appellant had "agreed to proceed with" the heirship determination in county court "without the requested transfer of the case" and thus without transfer of appellant's trespass-to-try-title claims and related claims for fraud and misconduct;

(5) **Motion to Dismiss on the Merits:** On February 5, 2004, after the county court issued its January 21, 2003 judgment, Albro moved to dismiss appellant's claims on the grounds that the county-court probate litigation had resolved title and left "nothing ... to litigate."

(6) **Motion to Dismiss—Dominant Jurisdiction:** On February 12, 2004, Albro amended the motion to dismiss by claiming that the county court had dominant jurisdiction over all of appellant's claims.

### Dominant "Jurisdiction": Subject–Matter Jurisdiction or Venue?

In his first issue for review, appellant contends that the trial court erred by dismissing the case with prejudice on domi-

nant-jurisdiction grounds because the ruling precludes any trial of appellant's fraud and misconduct claims in the heirship proceeding. Analysis of appellant's issue requires that we distinguish between subject-matter jurisdiction in the trial court and venue in the trial court.

### A. Whether the Trial Court Had Subject–Matter Jurisdiction

■ Appellant's claims in the trial court include an action for trespass-to-try title and claims for fraud and attorney misconduct that relate to the title issue. An action in trespass-to-try-title, or to quiet title, is a procedure by which rival claims to title or right of possession to real property may be adjudicated. *See Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex.2004); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 755, (Tex.2003).

■ As a district court, the trial court has general, subject-matter jurisdiction over suits involving title to land. *See* TEX. CONST. art. V, § 8 (district court has exclusive, original jurisdiction of "all actions, proceedings, and remedies," except when the constitution or other law confers jurisdiction on some other court); TEX. GOV'T CODE ANN. § 24.007 (Vernon 2000) ("The district court has the jurisdiction provided by Article V, Section 8 of the Texas Constitution."); TEX. PROP.CODE ANN. § 22.001–.045 (Vernon 2000) (governing trespass-to-try-title actions); *Doggett v. Nitschke*, 498 S.W.2d 339, 339 (Tex.1973).[4] The broad grant of jurisdiction in article V, section 8 of the constitution likewise encompasses

---

4. We recognize that the subject-matter jurisdiction of the district courts may not be exclusive and original when the issue of title to land relates only incidentally or collaterally to other issues in a suit. *E.g., Ex parte Alloju*, 894 S.W.2d 85, 88 (Tex.App.-Houston [14th Dist.] 1995) (orig.proceeding). Because our

inquiry here is limited to determining, as a preliminary matter, whether the trial court had subject-matter jurisdiction, we need not address and have not been asked to address whether the trial court's subject-matter jurisdiction over appellant's claims is original or exclusive.

jurisdiction in the trial court over appellant's fraud and misconduct claims.

We therefore hold that the trial court, as a district court of general jurisdiction, had subject-matter jurisdiction over appellant's action in trespass-to-try title and his related claims for fraud and attorney misconduct. We next address the implications of that conclusion.

## B. Subject–Matter Jurisdiction

 "Jurisdiction" refers to the power of a court, under the Constitution and laws, to determine the merits of an action between parties and to render a judgment. *See Reliant Energy, Inc. v. Gonzalez*, 102 S.W.3d 868, 871 (Tex.App.-Houston [1st Dist.] 2003), *aff'd*, 159 S.W.3d 615 (Tex. 2005) (citing *Nat'l Life Co. v. Rice*, 140 Tex. 315, 167 S.W.2d 1021, 1024 (1943)). Subject-matter jurisdiction refers to the court's power to hear a particular type of suit. *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996). Subject-matter jurisdiction " 'exists by operation of law only, and cannot be conferred upon any court by consent or waiver.' " *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex.2000) (quoting *Fed. Underwriters Exch. v. Pugh*, 141 Tex. 539, 174 S.W.2d 598, 600 (1943)); *see also Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993) (stating that subject-matter jurisdiction requires that party bringing suit have standing, that controversy between parties be live, and that case be justiciable); *Saudi v. Brieven*, 176 S.W.3d 108, 113 (Tex. App.-Houston [1st Dist.] 2004, no pet.) (further rejecting estoppel as permissible basis for subject-matter jurisdiction).

 Because lack of jurisdiction over the subject matter renders any judgment that a court may render void, a court without subject-matter jurisdiction has no choice but to dismiss. *See State v. Morales*, 869 S.W.2d 941, 949 (Tex.1994); *State ex rel. Latty v. Owens*, 907 S.W.2d 484, 485 (Tex.1995); *Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *see also Saudi*, 176 S.W.3d at 113; *Tourneau Houston, Inc. v. Harris County Appraisal Dist.*, 24 S.W.3d 907, 910 (Tex. App.-Houston [1st Dist.] 2000, no pet.) (citing *Fed. Underwriters Exch. v. Pugh*, 141 Tex. 539, 174 S.W.2d 598, 600 (1943)) (holding that lack of subject-matter jurisdiction is fundamental error that appellate court may properly raise and recognize sua sponte).

In this case, the trial court's dismissal of appellant's cause with prejudice is premised in part on the court's conclusion that the county court had "dominant jurisdiction" over appellant's title dispute. As addressed above, the trial court had subject-matter jurisdiction over this dispute. To any extent, therefore, that the trial court may have equated "dominant jurisdiction" in the county court with a lack of "subject-matter jurisdiction" in the trial court, the trial court erred. As we explain below, the doctrine of dominant jurisdiction pertains to venue and not to subject-matter jurisdiction.

## C. "Dominant" Jurisdiction: A Venue Doctrine

### 1. Dominant Jurisdiction Defined

 Dominant jurisdiction applies when venue is proper in two or more Texas counties or courts. *Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 622 (Tex. 2005); *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex.1988); *see also Perry v. Del Rio*, 66 S.W.3d 239, 252 (Tex.2001) (applying ripeness doctrine to resolve issue of four competing venues); *Ford Motor Co.*, 914 S.W.2d at 136 (competing courts of appeals). Dominant jurisdiction recognizes "the plaintiff's privilege to choose the forum" and accepts that choice as correct, provided "the forum is a proper one."

*Gonzalez,* 159 S.W.3d at 622; *Wyatt,* 760 S.W.2d at 248; *see Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063, 1070 (1926) (orig.proceeding), *disapproved on other grounds, Walker v. Packer,* 827 S.W.2d 833, 843 (Tex.1992) (orig.proceeding). Thus, "the court in which suit is first filed generally acquires dominant jurisdiction to the exclusion of other courts *if* venue is proper in the county in which suit was first filed." *Gonzalez,* 159 S.W.3d at 622 (emphasis in original) (citing *Wyatt,* 760 S.W.2d at 248); *see Cleveland,* 285 S.W. at 1069–70.

### 2. Venue is Not Jurisdictional[5]

 Jurisdiction and venue are not synonymous. *State v. Pounds,* 525 S.W.2d 547, 550 (Tex.Civ.App.-Amarillo 1975, writ ref'd n.r.e.). "Venue" refers to the propriety of prosecuting, in a particular form, a suit on a given subject matter with specific parties, over which the forum must, necessarily, have subject-matter jurisdiction. *See id; Reliant Energy, Inc.,* 102 S.W.3d at 871; *Nat'l Life Co. v. Rice,* 167 S.W.2d at 1025; *see also Herring v. Welborn,* 27 S.W.3d 132, 140–41 (Tex.App.-San Antonio 2000, pet. denied) (holding that issue of subject-matter jurisdiction "trumps" venue provisions of Civil Practice and Remedies Code). Venue may and generally does refer to a particular county, *Reliant Energy, Inc.,* 102 S.W.3d at 871, *Nat'l Life Co.,* 167 S.W.2d at 1024–25, but may also refer to a particular court. *See Miles v. Ford Motor Co.,* 914 S.W.2d 135, 138 (Tex.1995) (applying venue principles governing doctrine of dominant jurisdiction to deny motion to transfer appeal first filed and pend-

ing in San Antonio Court of Appeals to later-filed appeal pending before Austin Court of Appeals).

 Venue pertains solely to where a suit may be brought and is a different question from whether the court has " 'jurisdiction of the property or thing in controversy.' " *Nat'l Life Co.,* 167 S.W.2d at 1024; *see Herring,* 27 S.W.3d at 140–41. The transfer of a case from one court to another, therefore, "pertains to venue, not jurisdiction." *Gonzalez,* 159 S.W.3d at 622; *see also Nat'l Life Co.,* 167 S.W.2d at 1024–25 (holding that facts required to show "venue" under venue statute "have no necessary interrelation" with facts required to establish "jurisdiction").

 Moreover, unlike subject-matter jurisdiction, which may be challenged at any time, *see Saudi,* 176 S.W.3d at 113, venue may be waived if not challenged in due order and on a timely basis. TEX.R. CIV. P. 86(1); *see Massey v. Columbus State Bank,* 35 S.W.3d 697, 700 (Tex.App.-Houston [1st Dist.] 2000, pet. denied); *see also Herring,* 27 S.W.3d at 141 (holding that venue provisions of Civil Practice and Remedies Code are not jurisdictional and may be waived); *Sutton v. State Bar of Tex.,* 750 S.W.2d 853, 855 (Tex.App.-El Paso 1988, writ denied) (holding that party waived venue challenge by filing general denial before challenging venue). Because it may be waived, venue is not "jurisdictional." *See Herring,* 27 S.W.3d at 141; *Massey,* 35 S.W.3d at 700.

---

**5.** This general rule necessarily excludes instances in which the Legislature has enacted specific, jurisdictional venue provisions for suits against the State that trigger governmental immunity considerations. *See, e.g.,* TEX. GOV'T CODE ANN. § 311.034 (Vernon 2005) (provision of Code Construction Act precluding construction of statute as waiver of sover-

eign immunity unless waiver effected by "clear and unambiguous language"); TEX. GOV'T CODE ANN. § 2001.038(b) (Vernon 2000) (provision of Administrative Procedures Acts requiring that declaratory judgment actions concerning validity or applicability of rule be brought in Travis County district court).

## Dominant Jurisdiction in County Court Waived

Rule 86 of the Rules of Civil Procedure governs motions to transfer venue. Tex.R. Civ. P. 86(1). Rule 86(1) specifies that a party waives any objection to improper venue if the objection is "not made by written motion filed prior to or concurrently with any other plea, pleading or motion except a special appearance motion provided for in Rule 120a." *Id.; see Sutton,* 750 S.W.2d at 855; *Massey,* 35 S.W.3d at 700; *Herring,* 27 S.W.3d at 141. Rule 86(1) demands a due order of pleading to prevent the court from proceeding on "matters related to the merits" before determining whether venue is proper. *Glover v. Moser,* 930 S.W.2d 940, 941 (Tex. App.-Beaumont 1996, writ denied). The first pleading that Albro filed in this case was his general denial. Albro did not move to abate the trial-court cause until over a month after he filed his general denial. Moreover, Albro moved only to abate—pending the outcome of appellant's appeal of the county-court dismissal and his petition to reopen the 1981 Wharton–County probate case. Albro's motion to abate does not refer to venue or dominant jurisdiction in any respect. For over a year and a half, from May 20, 2002 until November 12, 2003, therefore, Albro limited his position in the trial court to denying appellant's claims on their merits.

Because dominant jurisdiction concerns venue, by filing a general denial to appellant's petition and, moreover, maintaining that position while the case was pending in the trial court for one and one-half years, the rationale supporting rule 86(1) waiver, as stated in *Glover,* 930 S.W.2d at 944, compels the conclusion that Albro waived any right he may have had to transfer appellant's claims to the county court.

In addition to the specific provisions of rule 86(1) for waiver of venue, well-settled dominant-jurisdiction precedents also recognize factors that will bar a party's reliance on the doctrine that Albro contends controls this case. These factors include (1) conduct by a party that estops him from asserting prior, active jurisdiction; (2) lack of persons to be joined if feasible, or the power to bring them before the court; and (3) lack of intent to prosecute the first lawsuit. *Wyatt,* 760 S.W.2d at 248 (citing *Cleveland,* 285 S.W. at 1070). The first factor controls here to bar Albro's contention that dominant-jurisdiction principles mandated dismissal of appellant's claims.

After permitting venue to proceed on the merits in the trial court, and only after this Court issued its May 1, 2003 opinion reversing the county-court dismissal, Albro moved to transfer the trial-court cause to the county court. Albro did not assert dominant jurisdiction in the county court, but merely contended that the county court had jurisdiction and could resolve all pending matters in a single trial. Albro's motion did not state any basis for his assertion. Likewise, Albro did not contest the trial court's subject-matter jurisdiction or refer, in any respect, to venue principles. Although it is not clear from the record when Albro set the hearing on his motion to transfer, the record reflects that the motion was reset for December 15, 2003, which was one day before the trial date for appellant's county-court litigation.

On December 15, 2003, however, Albro filed a "motion to pass" the hearing set that day on his motion to transfer. The reason stated was to permit the heirship determination to proceed in county court "without the requested transfer" of the trial-court action. Given that it was undisputed that the county-court litigation would then proceed, at that point in the trial-court litigation, Albro affirmatively waived any right he may have had to

transfer appellant's claims to the county-court. *See Motor Vehicle Bd. v. El Paso Indep. Auto Dealers Ass'n,* 1 S.W.3d 108, 111–112 (Tex.1999) (referring to waiver as voluntary relinquishment of a known right).

Despite having abandoned the transfer on the eve of the trial in county-court and only after that litigation was tried to judgment, Albro took two additional, yet conflicting, positions. In his February 5, 2004 motion to dismiss, Albro maintained that dismissal was proper because the county court's adjudication left "nothing . . . to litigate." One week later, however, Albro stated, for the first time, that the county court, in which the litigation had ended, had "dominant jurisdiction."

In addition to relinquishing any right he may have had under rule 86, we further hold, based on the circumstances demonstrated by the record, as outlined above, which include Albro's abandoning his request to transfer to permit the county-court litigation to proceed, only to claim, after that litigation ended, that it left nothing to litigate, as well as his delay in asserting dominant-jurisdiction principles, that Albro was estopped to contend assert any right he may have had to contend that the county court was the proper venue for appellant's claims.

We next address the propriety of the trial court's having disposed of appellant's claims by dismissal with prejudice.

### No Dismissal with Prejudice on Claim of Dominant Jurisdiction

■ When a forum in which venue is proper yields to another forum pursuant to the doctrine of dominant jurisdiction, the action of the yielding forum is "based on the principles of comity, convenience, and the need for an orderly procedure in the trial of contested issues." *Perry,* 66 S.W.3d at 252 (Tex.2001); *Wyatt,* 760 S.W.3d at.248; *Reliant Energy, Inc.,* 102 S.W.3d at 888 (citing *Wyatt,* 760 S.W.2d at 248).

*Perry* and *Wyatt* instruct that a court properly disposes of a motion premised on dominant jurisdiction by *abating the cause* to permit the court of dominant jurisdiction to proceed. *See Perry,* 66 S.W.3d at 252; *Wyatt,* 760 S.W.2d at 247–48. In *Miles,* however, the supreme court also sanctioned *dismissal of the cause* by the yielding court to permit the court with dominant jurisdiction to proceed. *See Miles,* 914 S.W.2d at 139 (citing *Mower v. Boyer,* 811 S.W.2d 560, 563 (Tex.1991), *Curtis v. Gibbs,* 511 S.W.2d 263, 267 (Tex. 1974), and *Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063, 1070 (1926)).[6] Relying on these latter precedents, some courts have held that a court must dismiss a pending cause in order to permit the court of dominant jurisdiction to proceed. *See Goodwin v. Kent,* 745 S.W.2d 466, 469–70 (Tex.App.-Tyler 1988) (orig.proceeding) (following *Curtis* precedent to grant mandamus relief to compel nondominant court to yield venue to court of dominant jurisdiction) (citing *Curtis,* 511 S.W.2d at 267).

■ Albro relied on *Goodwin* in the trial court and defends the trial court's ruling before this Court based on *Goodwin.* *Goodwin,* like *Curtis,* was an origi-

---

**6.** Although *Miles* recognized the split of authority on whether to abate or dismiss, the split of authority was not controlling, and the supreme court did not resolve the split. *See* 914 S.W.2d at 139. Similarly, *Perry* states that abatement is correct, but the court's instructions do not discredit precedents indicating that dismissal is appropriate. *See* 66 S.W.3d at 252. We need not address the split of authority here, however, because no precedent authorizes dismissal with prejudice on an assertion that another court has dominant jurisdiction.

nal proceeding for writ of mandamus in which the Tyler Court of Appeals applied *Curtis's* "first filed" principles of dominant jurisdiction. *See id.* at 469–70 (citing *Curtis,* 511 S.W.2d at 267). Like *Curtis, Goodwin* involved two competing courts in different counties, where similar claims were pending. *See id.* Applying *Curtis* as mandamus precedent, the *Goodwin* court held that the court in which the later-filed suit was pending "had a clear duty to dismiss" on being apprised of the previously filed suit and directed that court to vacate its order denying a plea in abatement. *Goodwin,* 745 S.W.2d at 469–70 (citing *Curtis,* 511 S.W.2d at 267).

The dismissal contemplated by *Goodwin,* therefore, is not a dismissal with prejudice, as was rendered against appellant here, but a dismissal to permit the first-filed suit, which had remained pending until then, to proceed, as authorized by *Curtis. See id.* In the case before us, there was no first-filed suit that could be permitted to proceed because that suit had already proceeded to judgment on appellant's determination of heirship. By dismissing appellant's claims with prejudice here, the trial court summarily disposed of those claims by precluding appellant from ever reasserting them. *See Shepherd v. Ledford,* 962 S.W.2d 28, 32–33 (Tex.1998); *Mossler v. Shields,* 818 S.W.2d 752, 754 (Tex.1991) (noting that dismissal with prejudice constitutes final adjudication on merits, with full res judicata and collateral estoppel effect). We know of no authority, and Albro has referred us to none, that authorizes dismissal of a pending action with prejudice based solely on an assertion of dominant jurisdiction.

We sustain appellant's first issue, and, therefore, his points of error one through four.

## Conclusion

We reverse the judgment of dismissal with prejudice and remand the cause for further proceedings.